MAHN and wife, Respondents, vs. CHICAGO & MILWAUKEE
ELECTRIC RAILROAD COMPANY and another, Appellants.

*May 11—June 3, 1909.*

*Vendor and purchaser of land: Sufficiency of conveyance tendered:
Contract for exchange: Remedies for breach: Equity: Adequacy
of remedy at law: Rescission: Lands occupied by railroad by
owner's consent: Cloud upon title.*

1. Whether, where a railroad company had agreed to procure cer-
   tain land and convey it to plaintiffs "by good warranty deed"
   in exchange for land owned by them, the tender to them of a
   full warranty deed from the true owner of the land might be
   held a sufficient performance on the part of the company, even
   without covenants of warranty from itself, not determined.
2. Where, in such case, plaintiffs were informed when such war-
   ranty deed was tendered that the grantor named therein held
   title "in trust" for the railroad company, and that the consid-
   eration for the land had been paid by the company, the nature
   of the trust not being disclosed, they were not bound to accept
   the deed as a compliance with the contract.
3. Upon the failure of the company to perform on its part the agree-
   ment to exchange lands, plaintiffs had the right either to sue
   for damages for the breach or to rescind the contract. The com-

pany could not compel them to sell their land for a sum of money which they had never agreed to accept.

4. Plaintiffs in such case having brought suit in equity for rescission of the agreement, the failure of the railroad company to object may be deemed a consent that the court, by exercise of its equitable powers, grant whatever form of relief is proper under the circumstances.

5. The agreement for exchange of lands having been followed by completed construction of the railroad over plaintiffs' land, no mere recovery at law could fully re-establish plaintiffs' rights, since the transaction amounted at least to a consent to the construction of the road, and such a status, once created by consent, would not be disturbed.

6. Unless completely rescinded, the written agreement for exchange would constitute an obstacle to plaintiffs' obtaining statutory compensation for the part of their land applied to railroad uses, and even after declaration of rescission it would be a cloud upon the title which equity should remove.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

The defendant railroad company laid out and surveyed its lines approximately north and south through plaintiff's tract of nearly forty acres, so as to leave about eighteen acres to the eastward of the right of way separated from the farm buildings. A written contract of date April 27, 1907, was entered into, whereby the plaintiffs agreed to convey all east of the west line of the 150-foot right of way, and in consideration thereof the railroad company agreed to procure and convey to them approximately the same amount of land on the west side of its right of way, joining theirs on the south, and to pay $800 in money, each party to go into immediate possession and the deeds to be passed within thirty days upon completion of survey. The plaintiffs agreed to convey by warranty deed and to furnish abstract. The company agreed to convey "by good warranty deed," but said nothing about the abstract. It was not, at the time of the contract, the owner of the land agreed to be conveyed by it. Possession was taken by each party and the railroad company proceeded

to grade its right of way, making an excavation which is now some twenty-seven feet in depth at the deepest point, and laying its tracks as a part of its line of railroad from Milwaukee to Chicago. It procured the land on the west side of the track, taking title, however, in the name of an agent, Josie Shenners, in trust for the company, in order that the record title should not be embarrassed by a general mortgage upon .all its property then owned or thereafter acquired, under which, up to the present time, some $10,000,000 of bonds have been sold. It also paid to the plaintiffs the $800 cash consideration. On August 3d, after submitting satisfactory abstract, the plaintiffs tendered warranty deeds and demanded deed from the company. The latter offered conveyance by warranty deed from said Josie Shenners, who had good record title. The plaintiffs refused to accept, and on August 15th notified the company in writing of their election to rescind the contract, accompanying such notice with a tender of the money they had received from the railroad company. This suit was brought to declare rescission of that contract as a cloud upon the title of plaintiffs' said real estate. Receivers of the railroad company having been appointed in some undisclosed proceeding in United States circuit court, they were joined as parties defendant. The defendants offered upon the trial to supplement the deed of Josie Shenners by full covenants of warranty on the part of the railroad company. The court rendered judgment that the written contract be rescinded, canceled, and declared null and void upon delivery to defendants of the said $800 and of a certain abstract delivered to the plaintiffs. From such judgment the defendants appeal.

T. W. *Spence,* of counsel, for the appellants.

*Christian Doerfler,* for the respondents.

Dodge, J. The first question seriously discussed is whether the railway company has so failed in performance on

its part of the contract for the exchange of lands that plaintiffs ought not to be held to performance on their part. That it did fail, and declare its inability, to make conveyance in technical compliance with its agreement, on demand, is confessed, but whether the tender of a full warranty deed from the true owner of the land might not be held a sufficient compliance, even without covenants of warranty from the company, is, to say the least, doubtful, standing alone. *Bateman v. Johnson,* 10 Wis. 1. In the instant case, however, that is not the only defect. With the tender of the deed from Shenners came the information that she held title "in trust" for the railroad company, and the intimation at least that the consideration for the land had been paid by the company. Whether this was a trust duly declared in writing was not disclosed, nor, if so, whether active or passive. If passive, so that title at once vested in the railroad company, would not the lien of the mortgage immediately fasten thereon? If active, would the proposed conveyance to plaintiffs be in breach of it? If there was no express trust, was not the title of Shenners clouded by the possibility of a resulting trust in favor of all creditors under sec. 2078, Stats. (1898), subject to plaintiffs' ability to overcome the presumption of fraudulent intent created by that statute? We do not think a conveyance casting upon the grantee the burden of answering at his peril such conundrums as these is the equivalent of the perfect title for which plaintiffs had agreed to convey their lands.

When the railroad company thus failed to carry out its part of the executory agreement plaintiffs had the right either to sue for damages for the breach or to declare their election to rescind. The company, being unable to carry out the contract to exchange certain lands, could not compel plaintiffs to sell their land for a sum of money which they had never agreed to accept. *Akerly v. Vilas,* 15 Wis. 401, 413; *Booth v. Ryan,* 31 Wis. 45, 58; *Lutz v. Compton,* 77 Wis. 584, 46:

N. W. 889. They adopted the latter course, thereby, of course, surrendering all rights, equitable or otherwise, in the lands which the company had agreed to convey them and their right to retain the money consideration which had been paid them. They accordingly tendered full surrender and repayment. Their right then became perfect to receive from the railroad company all that they had parted with to it in pursuance of the contract. Doubtless, so far as a complete enforcement of that right could be had in a court of law, the plaintiffs should there seek it, and not apply to a court of equity unnecessarily for relief; but they have applied to a court of equity and the defendants have raised no objection to their so doing, which of itself may be deemed a consent that the court, by exercise of its equitable powers, may consider and grant whatever form of relief is proper under the circumstances. *Smith v. Putnam,* 107 Wis. 155, 82 N. W. 1077, 83 N. W. 288. Apart from such consideration, however, the situation is so complicated by the construction, now completed, of a public railroad over the land that no mere recovery at law can fully re-establish plaintiffs' rights. But for that fact they might seek recovery of the possession of all their land with which they had parted in pursuance of the contract. But that transaction had at least served the purpose of a consent to the construction of the railroad over a portion of this land, and the policy of our statute law is against the disturbance of such a status once created with the consent of the owner. Sec. 1852, Stats. (1898); *Hanlin v. C. & N. W. R. Co.* 61 Wis. 515, 21 N. W. 623; *Babcock v. C. & N. W. R. Co.* 107 Wis. 280, 83 N. W. 316; *Stewart v. Milwaukee E. R. & L. Co.* 110 Wis. 540, 86 N. W. 163; *Brickles v. Milwaukee L., H. & T. Co.* 134 Wis. 358, 114 N. W. 810. Still the written agreement, unless completely rescinded, continually confronted plaintiffs as an obstacle to obtaining statutory compensation for that part of the land applied to railroad uses. The question of the effectiveness

of their attempted rescission *in pais* was, at the time of the commencement of the action, one which could be answered finally only by a decision of a court. The contract, therefore, presented, even after declaration of rescission, a cloud upon the title of their lands, and an obstacle to the sale thereof, the removal of which is inherently a function of equity, and, besides, is specially and additionally enjoined by sec. 3186, Stats. (1898).

It seems to us obvious that the definement of the parties' rights by a decree in equity is essential to anything like a complete re-establishment of the *status quo,* and that no mere recovery at law of either damages or the possession of the land subject to the right of way can be full adequate relief. We agree with the trial court that by reason of the failure and inability of the railroad company to convey to the plaintiffs a clear and unquestionable title to the lands on the west side of the right of way, the plaintiffs had a right to rescind the contract and did effectively exercise that right, except that they could not remove its effect as a consent to the occupation of the proposed right of way by the railroad, from which must result, of course, the continuance of that occupation and the resulting duty to make compensation in the manner prescribed by sec. 1852, Stats. (1898). This we understand to be the effect of the judgment entered by the circuit court, although not therein fully expressed.

*By the Court.*—Judgment affirmed.