JOHANNA C. JOHNSON v. GUSTAF PETERSON.[1]

November 20, 1903.

Nos. 13,598—(36).

**Adverse Claims.**

In an action to determine an adverse claim to real property, plaintiff being in possession, the answer contained a counterclaim in ejectment. Held, that the procedure was not changed by reason of this counterclaim, and that the defendant was not entitled to a jury trial.

**Curative Acts.**

Held, that a defective foreclosure of a mortgage under the power therein contained, made in the year 1874, was validated by the curative acts of 1883 and 1889, now G. S. 1894, §§ 6054, 6055.

**Adverse Possession.**

Possession of a vendee under an executory contract for the purchase of land is not adverse to the vendor so long as the purchase money is not paid, or at least not before the vendee is entitled to demand a deed. A privity exists between the vendor and the vendee, which precludes the idea that pending the completion of the contract by a payment of the money the possession of the vendee can become adverse to the legal title held by the vendor.

[1] Reported in 97 N. W. 384.

**Findings of Court.**

> *Held,* that the conclusion of law herein that plaintiff was the owner of the land, and entitled to a judgment declaring the defendant's asserted claim null and void, and that he had no title, estate or interest in or to the land, was unsupported by the findings of fact, wherein, in effect, it was found that the plaintiff and her predecessor in interest had been and were in possession and occupancy of the property under a claim of ownership under a contract of sale made in the year 1876 with defendant's grantor.

Action in the district court for Chisago county to determine the adverse claim of defendant to land in possession of plaintiff. The case was tried before Crosby, J., who found in favor of plaintiff. From a judgment entered pursuant to the findings defendant appealed. Reversed, and new trial ordered.

*P. H. Stolberg* and *Alfred P. Stolberg,* for appellant.

*P. M. Qvist* and *S & O. Kipp,* for respondent.

COLLINS, J.[2]

This action was brought to determine an adverse claim made by defendant to eighty acres of land in Chisago county, in the possession of plaintiff. By an amendment to the original complaint, the latter's right to the land and the extent of her possession were set forth in detail, but the nature of the action was not thereby changed. It was still an action to determine an adverse claim. In his answer the defendant denied the alleged ownership of the plaintiff; admitted, however, that she was in possession; and then alleged that this possession was wrongful, unlawful, and without any right. Defendant further alleged that he was the owner in fee simple, setting out that his title was derived from the United States government through certain conveyances. He demanded that he be declared the owner in fee simple, and entitled to possession. In her reply, plaintiff alleged title by adverse possession, under the statute. When the case came on for trial, defendant moved that a jury be impanelled to try the issues. The motion was denied, and the case was thereupon tried by the court without a jury.

Upon hearing the evidence the court found that a patent was issued by the United States, in which one Hyde was patentee, bearing date

[2] START, C. J., absent, sick, took no part.

June 1, 1866; that in 1867, Hyde, by warranty deed, conveyed the land to one Strand; that on April 30, 1871, Strand duly executed and delivered a mortgage upon the land to one Taylor, all of which instruments were duly recorded; that Taylor subsequently attempted to foreclose the mortgage by advertisement; that in the published notice of such foreclosure it was stated that a sale would take place on June 3, 1874; that on the day last mentioned the sale was adjourned by the sheriff to June 17; that there was a total failure to show by printer's affidavit or otherwise that any notice of such adjournment was published; that at the foreclosure sale the premises were bid in by the mortgagee, to whom was issued a sheriff's certificate of sale, fair and regular on its face, and there was no redemption. The court also found that in the fall of 1876 Taylor verbally contracted to sell this land to one Alfred Johnson for the sum of $400; that, of this agreed purchase price, Johnson paid $100 in cash, and agreed to pay the balance in three equal annual instalments, of $100 each; that he took possession of the property, and built a house thereon, and continued to occupy the same as his home up to March 31, 1892, when he died intestate. And also found the extent of improvements made by Johnson, and, among other things, that in 1884 he inclosed all of the land with a fence; that the plaintiff is the mother of said Johnson, and his only heir at law; that she was residing with him upon the land at the time of his death, and has ever since lived there, and has been in possession of the entire tract. The court also found that Johnson never in fact paid any part of the $300, the deferred payment on the purchase price; that the possession and occupancy of Johnson in his lifetime, and his mother, this plaintiff, since that event, have been under a claim of ownership under the contract of sale between Taylor and Johnson made in 1876, as aforesaid. Upon these findings of fact, the conclusions of law were that plaintiff was the owner in fee simple, entitled to possession of the premises, and entitled to a judgment against defendant that his adverse claim is null and void, and that he has no title, estate, or interest in or to the land.

This case is presented, on an appeal from the judgment, upon the pleadings, the order of the court denying defendant's motion for a jury trial, the findings of fact, and the conclusions of law before

mentioned. The findings are not questioned, and therefore must be accepted as fully warranted by the testimony.

1. The character of this action has been heretofore stated. It was brought to determine an adverse claim to real property; the plaintiff being in possession, and the answer setting up a counterclaim in ejectment. Except as otherwise provided by statute, all the ordinary rules governing suits in equity to quiet title apply to this action, and it was triable by the court and not by a jury. Roussain v. Patten, 46 Minn. 308, 48 N. W. 1122. See also Larkin v. Wilson, 28 Kan. 513; Angus v. Craven, 132 Cal. 691, 64 Pac. 1091, in which the same rule is announced. Under the complaint the case was for trial by the court without a jury, and the fact that the answer contained a counterclaim in the nature of ejectment did not change the procedure.

2. The apparently defective foreclosure of this mortgage was validated by Laws 1883, p. 155 (c. 112), a curative act, which covered sheriff's certificates of any sale theretofore made or thereafter to be made. This statute is now found as a part of G. S. 1894, § 6054. Another curative act of similar nature was passed in 1889, now section 6055, supra. These enactments furnish a complete bar to any proceeding questioning the validity of the foreclosure, the period of twenty-five years having expired between the day of the foreclosure sale and the commencement of this action.

3. It is well settled that the possession of a vendee under an executory contract for the purchase of land is not adverse to the vendor so long as the purchase money is not paid, or at least not before the vendee is entitled to demand a deed. Hannibal v. Miller, 115 Mo. 158, 21 S. W. 915. See also Dean v. Goddard, 55 Minn. 290, 56 N. W. 1060; Mitchell v. Chisholm, 57 Minn. 148, 58 N. W. 873; Thompson v. Ellenz, 58 Minn. 301, 59 N. W. 1023. A privity exists between the vendor and the vendee, which precludes the idea that pending the completion of the contract by a payment of the money the possession of the vendee can become adverse to the legal title held by the vendor. The authorities are all to the point that "the quo animo a possession is taken or held furnishes the true test of its character. The possession, to be adverse, must be shown to have been hostile in its inception, or that, having been begun in consistency with the rightful title, its character has changed; but there must be adequate cause for the

change, or for imputing it. Where it commences under acknowledgment of the right owner's estate, the possession will retain its original quality, through any succession of occupants of the land, and will be presumed to be in subservience to the rightful interest. The strictest proof of hostile inception of the possession is required." Collins v. Colleran, 86 Minn. 199, 204, 90 N. W. 364; Rucker v. Steelman, 97 Ind. 222; Robinson v. Sherwin, 36 Vt. 69. When a vendor retains the legal title to land, a vendee cannot purchase or assert an outstanding title, nor do anything by which such title shall be divested, except by performing every obligation on his part which the retention of such title was intended to secure. 3 Pomeroy, Eq. Jur. § 1260.

And as we have heretofore stated, the finding was to the effect that the plaintiff and her deceased son, during all the time they had occupied the premises and at the time of the trial, held possession under the contract. It follows that the possession was not, and never had been, a renunciation of the contract, or adverse to defendant or to Taylor, his predecessor in interest—on the contrary, in actual subordination to it and to their rights. There was no repudiation of the terms and obligations of the contract, but a continued and present recognition of the same. The law will not tolerate an admission of contract obligations and a denial thereof in the same breath. Counsel for the respondent contend that because the present defendant purchased the land in 1880, after the Peterson contract had been entered into and the vendee had taken possession, he has no vendor's lien upon the land, and for that reason has no interest therein to be protected here. The question presented is not one of vendor's lien, for the legal title has remained either in Taylor or in the present defendant from the time the contract was entered into until the present, and no lien is asserted. There was nothing to forbid a sale and conveyance of this land by Taylor to defendant. Johnson being in possession under his contract, defendant bought subject to it. Of its terms he would be obliged to take full notice, because Johnson was in possession; but the fact that Taylor sold the land did not pay Johnson's debt, nor did it authorize any disclaimer on his part of liability in accordance with his agreement. In Meyers v. Markham, supra, page 230, it was held that a vendee in an executory contract for the sale of real property has his election of two remedies in case the vendor sells: First,

acquiesce in the transfer, which in this case would result in substituting defendant for Taylor; or, second, treat the conveyance as a breach of the contract, and resort to an action for damages therefor. The record is conclusive that both the plaintiff and her son have acquiesced in this contract.

Counsel also urges that the statute of limitations, and also the doctrine of laches, are pertinent, and should be applied to a case like this, because more than twenty-five years have expired since the making of the contract for the purchase of the land, but neither of these questions is properly under consideration here upon the findings. From the one we have heretofore specifically referred to, it can readily be inferred that the retention of the premises by the son without payment, and, since his death, by the mother, was upon the active request of the persons last named, and with defendant's full consent.

On the findings, the court could not properly reach the conclusion that the defendant had no interest, right, or title in these premises, because the finding showed that he had.

The judgment must be, and hereby is, reversed; but we think it is a proper case for another trial, under the rule stated in Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958, and for that reason a new trial is ordered.